**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gerald L. Flunder,<br><br>              Plaintiff,<br><br>v.<br><br>Arizona Board of Regents, et al.,<br><br>              Defendants. | No. CV-13-01893-PHX-DGC<br><br>**ORDER** |

Defendants Dr. Cummings and Dr. Chhabra ("Doctor Defendants") have filed a motion to dismiss the claims against them. Doc. 9. The Arizona Board of Regents and other Defendants affiliated with Arizona State University ("ASU") (collectively, the "University Defendants") have also filed a motion to dismiss that the Doctor Defendants have joined. Docs. 11, 14. The motions have been fully briefed. Docs. 24, 25. For the reasons stated below, the Court will grant the motions.

**I.    Background.**

Plaintiff Gerald Flunder was a walk-on member of the ASU's football team in 2007. Doc. 1, ¶ 16. He was cut after failing to meet the team's academic standards, but rejoined the team in 2008. *Id.* Unfortunately, during practice on November 19, 2008, Plaintiff suffered a serious left-knee injury that included torn ligaments and damage to the peroneal nerve. *Id*., ¶ 19. Dr. Cummings, a sports medicine consultant to ASU's athletics teams, examined Plaintiff's knee and immediately expressed concern about damage to the peroneal nerve, noting that if the nerve failed to regenerate after surgery,

1    Plaintiff's football career would be over.  *Id*.  Dr. Cummings examined Plaintiff again on
2    November 20 and 24, 2008.  *Id*., ¶¶ 30, 33.  Plaintiff was also seen by Dr. Steven
3    Erickson, ASU's Head Team Physician, on November 21, 2008, *id*., ¶ 31, and by Dr.
4    Chhabra on December 4, 2008, *id*., ¶ 34.  Although Plaintiff alleges that notes from the
5    three doctors were inconsistent in some ways, all three found peroneal nerve damage.

6           On December 12, 2008, Dr. Cummings performed surgery on Plaintiff's knee.  *Id*.,
7    ¶ 49.  The same day, Dr. Cummings informed Plaintiff's parents that if the peroneal nerve
8    was damaged and could not regenerate, Plaintiff's football career would be over.  *Id*.,
9    ¶ 75.  The surgery successfully repaired all of the torn ligaments in the knee, and it
10   appeared that the peroneal nerve was not damaged.  *Id*., ¶ 77.  However, three days later
11   on December 18, Dr. Cummings noted "patchy sensation" related to the peroneal nerve,
12   *id*., ¶ 80, and on December 22, again noted sensation loss, *id*., ¶ 82.  Although Plaintiff's
13   knee continued to improve, symptoms of nerve damage persisted.  *Id*., ¶¶ 84, 86-98.  By
14   October 2009, Plaintiff's assessment plans characterized his peroneal nerve damage as
15   "chronic."  *Id*., ¶ 99.  An additional surgery was performed on Plaintiff's knee on October
16   8, 2009 to remove scar tissue that had formed around the nerve and had prevented it from
17   regenerating.  *Id*., ¶ 101.

18          Plaintiff noted improvement during physical therapy after the second surgery.  *Id*.,
19   ¶¶ 102-108.  Nevertheless, during a visit to Dr. Chhabra on January 25, 2010, Dr.
20   Chhabra noted that Plaintiff would "not be playing football."  *Id*., ¶ 109.  By March 2010,
21   doctors noted that Plaintiff "has not changed in progress regarding his peroneal nerve
22   injury but his knee is doing well," and discussed life after football with Plaintiff.  *Id*.,
23   ¶113.  Plaintiff alleges that he was cleared to start jogging in June 2010, but that this
24   clearance was not retained in his medical records, and Defendant Erickson, as head team
25   physician, refused to let Plaintiff run with the team, noting that the clearance was only for
26   self-paced jogging and not participation in team workouts.  *Id*., ¶¶ 117-25.

27          On March 21, 2011, Plaintiff and his mother met with Defendants Erickson,
28   Chhabra, and Martin.  The doctors informed Plaintiff that his recovery was "substantial

but incomplete," that he presented a high risk for further injury if he engaged in high-level athletic activities, and that he would not ever be cleared to return to football at ASU. *Id*., ¶ 129. At that meeting, Plaintiff's mother asked to speak to someone in ASU's legal department, but this request was denied. *Id*., ¶¶ 130-31.

Despite this news from ASU doctors and administrators, Plaintiff continued to work to rehabilitate his knee and, in August 2011, demonstrated to Defendant Chhabra that he could do squats and walk on his heels and toes without pain. *Id*., ¶ 143. Nevertheless, Dr. Chhabra did not clear him to play football, stating he had not made a 100% recovery. Dr. Chhabra told Plaintiff that he would never clear him to play. *Id*. At this point, Plaintiff alleges, he and his mother and trainer "realized this was a racial and retaliation issue." *Id*.

Plaintiff met with Dr. Cummings on September 7, 2011 to request a clearance to play football again, but did not receive one. Similarly, on September 12, 2011, Dr. Chhabra noted that Plaintiff would not be cleared to return to football due to risk of injury. *Id*., ¶¶ 151-52.

Plaintiff persisted. In January 2012, Plaintiff called Dr. Cummings' office and spoke to a medical assistant about getting a medical clearance to play football. *Id*., ¶ 157. The assistant asked Plaintiff what he wanted Dr. Cummings to say on the clearance, Plaintiff replied that he wanted it to say "OK to return to play football," and on January 20, 2012, Plaintiff received a release from Dr. Cummings' office that stated he was "OK to play All Sports OK to play Football." *Id*., ¶ 157. On February 1, 2012, however, Cummings notified ASU that there was "an inappropriate note sent . . . I did not clear him to play." *Id*., ¶ 161. Dr. Cummings did not, in fact, have any authority to clear Plaintiff to play football. *Id*., ¶ 173. The medical assistant that Plaintiff had spoken to was later fired by Dr. Cummings. *Id*., ¶ 189.

Following this clarification by Dr. Cummings, Plaintiff tried numerous times to meet with and convince administrators in ASU's athletic department to clear him to play football, all to no avail. *Id*., ¶¶ 153, 157, 175-187. Plaintiff also received phone calls and

letters from Dr. Cummings clarifying the mistake in sending the Sports Release. *Id.*, ¶¶ 189-93. In March, April, and May of 2012, Plaintiff received a series of letters from ASU administrators and officials reiterating that he was not eligible to play football at ASU due to his injury. *Id.*, ¶¶ 199, 203, 206-07.

Plaintiff filed this suit on September 12, 2013, seeking one hundred million dollars and declaratory relief allowing him to play football at ASU. In a 137-page complaint, he alleges claims for (1) race discrimination under 42 U.S.C. § 1981 for not being cleared to play football, (2) retaliation under 42 U.S.C. § 1981, (3) equal protection violation under 42 U.S.C. § 1983 for not being cleared to play football, and (4) retaliation under 42 U.S.C. § 1985 for refusing to let Plaintiff and his mother speak to ASU's legal department.

Defendants move to dismiss Plaintiff's claims under Rules 8(a) and 12(b)(6), arguing that the claims are barred by the statute of limitations, barred by the Eleventh Amendment and sovereign immunity, barred by qualified immunity as to individual defendants, and fail to state claims under §§ 1981, 1983, and 1985. This case can be resolved on statute of limitations grounds.

**II.     Analysis.**

"[T]he statute of limitations defense . . . may be raised by a motion to dismiss . . . [i]f the running of the statute is apparent on the face of the complaint." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (citing *Graham v. Taubman*, 610 F.2d 821 (9th Cir. 1979)). Even if the relevant dates alleged in the complaint are beyond the statutory period, however, the "'complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'" *Hernandez v. City of El Monte*, 138 F.3d 393, 402 (9th Cir. 1998) (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)). Indeed, "[d]ismissal on statute of limitations grounds can be granted pursuant to Fed. R. Civ. P. 12(b)(6) 'only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" *TwoRivers v. Lewis*,

1 174 F.3d 987, 991 (9th Cir. 1999) (citing *Vaughan v. Grijalva*, 927 F.2d 476, 478 (9th Cir. 1991) (quoting *Jablon*, 614 F.2d at 682)). "'Because the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it is not generally amenable to resolution on a Rule 12(b)(6) motion.'" *Hernandez*, 138 F.3d at 402 (quoting *Supermail Cargo*, 68 F.3d at 1206).

Because the civil rights statute contains no statute of limitations, courts apply the statute of limitations for personal injury actions under state law to claims under §§ 1981, 1983, and 1985. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). The Arizona statute of limitations for these claims is two years. *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 974 (9th Cir. 2004) ("borrow[ing] Arizona's statute of limitations for personal injury claims" for §§ 1981 and 1983 claims); *McDougal v. Cnty. of Imperial*, 942 F.2d 668, 673-74 (9th Cir. 1991) ("suits under § 1985(3) are also best characterized as personal injury actions and are governed by the same statute of limitations as actions under § 1983"). "[U]nder federal law, a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Lukovsky v. City & Cnty. of S. F.*, 535 F.3d 1044, 1048 (9th Cir. 2008).

Defendants argue that Plaintiffs claims under §§ 1981, 1983 and 1985 accrued on March 21, 2011, when ASU's Head Team Physician informed Plaintiff that he would never be cleared to play football. Doc. 11 at 6. They urge that Plaintiff's attempts to convince ASU to reconsider this decision did not extend the statute of limitations, and that his claims are barred because Plaintiff filed suit on September 12, 2013, more than two years after the March 2011 decision. The Court agrees.

Plaintiff's detailed complaint makes clear that his claims center on ASU's refusal to allow him to play football. The complaint shows that this refusal became clear on March 21, 2011, when Doctors Chhabra, Erickson, and Martin told Plaintiff he would never be cleared to play football at ASU. Doc. 1, ¶ 129 (alleging that Dr. Erickson's assessment plan states "I have informed the patient again that he is **NOT** cleared for participation in football and due to deficits he will **NEVER** be cleared to return to play.")

(emphasis in original).  As of March 21, 2011, therefore, Plaintiff knew or had reason to know of the injury which is the basis of this action – Defendants' refusal to allow him to play football.  His claim therefore accrued more than two years before he filed suit in September of 2013, and is barred by the statute of limitations.  *Lukovsky*, 535 F.3d at 1048.[1]

Even if the court were somehow to conclude that Plaintiff's claim did not accrue when he was conclusively told, by three doctors, that his football days were over, Plaintiff specifically alleges that "Plaintiff, his mother and trainer realized this was a racial and retaliation issue" during an August 2011 meeting with Dr. Chhabra.  Doc. 1, ¶ 143.  This express recognition of his discrimination claim also occurred more than two years before his complaint was filed.

Plaintiff cannot credibly argue that his cause of action accrued on February 1, 2012, when he alleges that Defendants reneged on the sports release that was issued in error by Dr. Cummings's office in January of 2012.  Doc. 24 at 7.  By his own admission, Plaintiff was told unequivocally, well before that date, that his football career at ASU had ended.  The erroneous issuance of the clearance by a medical assistant with whom Plaintiff spoke by phone did not somehow eliminate those earlier communications or the accrual of his claim, particularly when the error was corrected quickly.  And because Plaintiff himself alleges that he realized he was the victim of racial discrimination in August of 2011, he cannot somehow claim that the discrimination first appeared when the error was corrected in February of 2012.

In short, this is a case where the allegations of the complaint make clear that Plaintiff's claim accrued more than two years before he filed his complaint.  It "appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim."  *Hernandez*, 138 F.3d at 402.

---

[1] Plaintiff's fourth claim for relief alleges that at this same meeting on March 21, 2011, Plaintiff was denied permission to speak to ASU's legal department.  Doc. 1, ¶ 230.  To the extent this claim asserts a different constitutional violation than the allegedly discriminatory ban on his football playing, it too occurred on March 21, 2011, more than two years before Plaintiff filed his complaint.

**IT IS ORDERED** that Defendants' motions to dismiss (Docs. 9, 11) are **granted**. The Clerk is directed to terminate this action.

Dated this 7th day of April, 2014.

_____
David G. Campbell
United States District Judge